Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **WILSON ACEVEDO,** | **Civil Action No.: 23-0671 (ES) (JSA)** |
| **Plaintiff,** | **OPINION** |
| **v.** |  |
| **UNITED STATES OF AMERICA** *et al.*, |  |
| **Defendants.** |  |

SALAS, DISTRICT JUDGE

Plaintiff Wilson Acevedo filed a complaint against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* (D.E. No. 1 ("Complaint" or "Compl.")). Before the Court is United States's ("Defendant") motion to dismiss Plaintiff's claim for damages in excess of $13,200 pursuant to Federal Rule of Civil Procedure 12(b)(1). (D.E. No. 7 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendant's Motion is **GRANTED,** and Plaintiff's claim for damages in excess of $13,200 is dismissed *with prejudice*.

## I.      BACKGROUND

### A.      Factual Background

On or about November 28, 2020, Plaintiff was operating a motor vehicle in Dover, New Jersey. (Compl. at 2). Plaintiff alleges that he suffered injuries as a result of a motor vehicle

1

accident involving his vehicle and a vehicle driven by United States Postal Service ("USPS") employee Brian M. Matoke ("November 28, 2020 Accident").  (*Id.*).

On or about December 29, 2020, Plaintiff filed an administrative tort claim with USPS ("Tort Claim I").  (Ex. A to D.E. No. 7-2 ("Juneau Decl.")).  In Tort Claim I, Plaintiff explained that his property damage and personal injury damages from the November 28, 2020 Accident were "currently unknown" and stated that his total damages were "currently unknown as bills [we]re still accumulating."  (*Id.*).  On February 9, 2021, and April 14, 2021, USPS sent Plaintiff letters informing Plaintiff that USPS could not accept Tort Claim I because, among other things, it failed to provide a claim for a specific amount.  (*See* Exs. B & C to Juneau Decl.).  On or about April 20, 2021, Plaintiff sent USPS a second administrative tort claim ("Tort Claim II").  (Ex. D to Juneau Decl.).  In Tort Claim II, Plaintiff reported property damage from the November 28, 2020 Accident as "6,100 tow truck invoice" and "$7,100 value of car."  (*Id.*).  He stated that his personal injury damages were "currently unknown."  (*Id.*).  Plaintiff also reported his total amount of damages as "$13,200 see attached invoice and estimate."  (*Id.*).  On December 7, 2021, USPS received a letter from Plaintiff's attorney, Thomas F. Flynn III, Esq., explaining that he had "been retained to represent [Plaintiff] in a claim for personal injuries sustained" as a result of the November 28, 2020 Accident and providing that "[a]s soon as [his] investigation and file [are]complete, [he would] inform [USPS] as to the extent of the claim."  (Ex. E to Juneau Decl.).

On October 24, 2022, USPS mailed Mr. Flynn a letter denying Tort Claim II because Plaintiff had "failed to provide the Postal Service with competent evidence to support [his] claim." (Compl. at 1–2; Ex. F to Juneau Decl.).  The denial letter informed Plaintiff that if he was dissatisfied with USPS's final denial of his administrative claim he had six months to either (i) file suit in a United States District Court; or (ii) file a written request for reconsideration.  (Ex. F to

Juneau Decl.).  On November 22, 2022, Plaintiff sent USPS a third administrative tort claim ("Tort Claim III").  (Compl. at 2; Ex. G to Juneau Decl.; *see also* Ex. A to D.E. No. 9 at 5 ("Falcione Decl.")).  In Tort Claim III, Plaintiff again recounted the November 28, 2020 Accident and reported his property damages as $7,101.38; his personal injury damages as $1,000,000; and his total amount of claim as $1,007,101.38.  (Ex. G to Juneau Decl.; Ex. A to Falcione Decl.).

On January 11, 2023, USPS sent Mr. Flynn a letter informing him that it would take no action with respect to Tort Claim III.  (Ex. H to Juneau Decl.).  As an initial matter, USPS informed Mr. Flynn that to the extent he was attempting to file a new administrative claim on behalf of Mr. Acevedo for the November 28, 2020 Accident, that claim was untimely, "as more than two years have passed since the date of the incident, and neither the Federal Tort Claims Act nor federal regulations allow for the filing of a new/second claim after the denial of a claim presented for the same incident by the same claimant."  (*Id.*).  As such, USPS stated it had no authority to consider such a claim.  (*Id.*).  Further, USPS informed Mr. Flynn that to the extent Plaintiff was attempting to amend his administrative claim, that amendment was untimely because USPS had already denied Tort Claim II.  (*Id.*).  As such, USPS stated it had no authority to consider such an amendment.  (*Id.*).  For these reasons, USPS informed Mr. Flynn that it would take no action with respect to Tort Claim III.  (*Id.*).

### B.    Procedural History

Plaintiff initiated this action on February 7, 2023, against the United States pursuant to the FTCA.  (*See* Compl.).  In his Complaint, Plaintiff alleges that he suffered injuries as a result of the motor vehicle accident involving his vehicle and a vehicle driven by USPS employee Brian M. Matoke.  (*Id.* at 2).  Plaintiff alleges that Mr. Matoke was operating his motor vehicle in a "careless and negligent manner" and as such, caused a collision with Plaintiff.  (*Id.*).  On June 30, 2023,

Defendant moved to dismiss Plaintiff's claim for damages in excess of the $13,200 estimate of damages he reported in Tort Claim II.  (*See* Motion; D.E. No. 7-1 ("Mov. Br.")).  On July 29, 2023, Plaintiff filed an opposition, arguing that his claim for damages in excess of $13,200 should not be barred and stating that he should only be limited to the $1,007,101.38 in damages he claimed in Tort Claim III.  (D.E. No. 9 ("Opp. Br.")).  On July 25, 2023, Defendant filed a reply.  (D.E. No. 10 ("Reply")).  On August 31, 2023, the Court granted Plaintiff leave to file a sur-reply; Plaintiff filed that sur-reply on September 1, 2023.  (D.E. No. 15 ("Sur-reply")).[1]

## II.    LEGAL STANDARD

The Court can adjudicate a dispute only if it has subject matter jurisdiction to hear the asserted claims.  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  "Rule 12(b)(1) governs jurisdictional challenges to a complaint."  *Otto v. Wells Fargo Bank, N.A.*, No. 15-8240, 2016 WL 8677313, at *2 (D.N.J. July 15, 2016).  "Two types of challenges can be made under Rule 12(b)(1)—'either a facial or a factual attack.'"  *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)).  In deciding a Rule 12(b)(1) motion for lack of subject matter jurisdiction, a court must first determine whether the party presents a facial or factual attack, because the "distinction determines how the pleading [is] reviewed."  *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (internal quotation marks and citation omitted).  A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to 'comport with the jurisdictional prerequisites.'"  *Id*. (citing *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. Pa. 2015)).  Here, Defendant appears to suggest that its attack on subject matter jurisdiction is factual.  (Mov.

---

[1]       Unless otherwise noted, citations to Docket Entry Numbers 9 and 15 correspond to the pagination automatically generated by the Court's electronic filing system.

Br. at 4).  In challenging subject matter jurisdiction, Defendant relies on the Complaint as well as the administrative claims submitted by Plaintiff to USPS and USPS's disposition of Plaintiff's administrative claims.  (*See* Mov. Br.).  As such, the Court treats Defendant's motion as raising a factual attack.  For a factual attack, a court may "review evidence outside the pleadings" to determine whether subject matter jurisdiction exists.  *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).  Moreover, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  As such, for purposes of this motion the Court considers the administrative claims submitted by Plaintiff to USPS and USPS's disposition of Plaintiff's administrative claims.

## III.    DISCUSSION

It is well-settled that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (alterations in original).  Absent a waiver, federal courts lack subject matter jurisdiction over claims against the federal government.  *See id.*  The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–80, provides "a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment."  *United States v. Orleans*, 425 U.S. 807, 813 (1976).  The FTCA requires exhaustion of administrative remedies before instituting suit.  In particular, the statute provides that:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal

5

> injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.  The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).  As is apparent from the plain language of 28 U.S.C.§ 2675(a), a claimant must first: (i) present his or her claim to the appropriate federal agency and (ii) have the claim denied before bringing suit under the FTCA.  These presentment and administrative exhaustion requirements are "jurisdictional and cannot be waived."  *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003); *Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971) (explaining that the presentment requirement is jurisdictional and not subject to waiver).

To fulfill the presentment requirement a claimant must "(i) give[] the agency written notice of his or her claim sufficient to enable the agency to investigate and (ii) place[] a value on his or her claim."  *Tucker v. U.S. Postal Serv.*, 676 F.2d 954, 959 (3d Cir. 1982); *see also* 28 C.F.R. § 14.2(a) (providing that, for the purposes of § 2675, "a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident").  As to the requirement that the claimant place a value on his claim, the purpose of this "sum certain" requirement is to allow the government to assess "whether the claim falls within the jurisdictional limits of [the agency's] exclusive authority to process, settle[,] or to properly adjudicate the claim."  *Bialowas*, 443 F.2d at 1050.  Accordingly, the claimant "must state a 'specific sum' or 'information . . . from which a specific amount could

be computed.'" *Bruno v. U.S. Postal Serv.*, 264 F. App'x 248, 249 (3d Cir. 2008) (alteration in original) (quoting *Bialowas*, 443 F.2d at 1049).   The FTCA's "sum certain" requirement is jurisdictional and cannot be waived.  *See White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 459 (3d Cir. 2010).

With respect to the final agency denial requirement, the FTCA provides that such denial occurs when the "claim [is] finally denied by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a).  Additionally, the FTCA provides that the failure of a federal agency to render a final disposition of the claim within six months from the time it is filed is "deemed a final denial of the claim for purposes of [§ 2675(a)]."  *Id.*

A lawsuit may only be filed in federal district court within six months from the date on which the agency mails notice of its denial of the administrative claim.  28 U.S.C. §§ 2401, 2675(a).  Alternatively, if the agency does not issue a final decision on the claim within six months of its filing, the claimant may treat this lack of disposition as a denial and proceed to file a civil action within six months of that date.  28 U.S.C. § 2675(a).  Of particular relevance here, the FTCA limits the damages a plaintiff may seek in a civil action brought pursuant to Section 2675.  28 U.S.C. § 2675(b).  By the terms of the statute, damages are capped at the amount set forth in the administrative claim presented to the agency, that is, the Standard Form 95 ("SF-95").  *Id.* (providing that an action "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency").  "Because the Federal Tort Claims Act constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed."  *Livera v. First Nat'l State Bank of N.J.*, 879 F.2d 1186, 1194 (3d Cir.1989).  Courts "should not take it upon [them]selves to extend the waiver beyond that which Congress intended."  *United States v. Kubrick,* 444 U.S. 111, 117–18 (1979).

Here, Defendant argues that Plaintiff is limited to the $13,200 sum certain that he set forth for his property damages in Tort Claim II. (Mov. Br. at 7).[2] Defendant contends that while USPS's denial of Tort Claim II allowed Plaintiff to file suit in district court, that denial limited him to the $13,200 he set forth for damages pursuant to 28 U.S.C. § 2675(b). (*Id.*). Defendant further argues that even though Plaintiff filed Tort Claim III, one month after USPS denied Tort Claim II, the filing of Tort Claim III does not alter the fact that Plaintiff can only pursue $13,200 in damages in this action. (*Id.* at 8). More specifically, Defendant points out that "[o]nce USPS denied Tort Claim II, Plaintiff had six months either to file suit in district court, pursuant to 28 U.S.C. § 2401(b), or to request reconsideration of the denial, pursuant to 39 C.F.R. § 912.9(b)." (*Id.* (citing Ex. F to Juneau Decl.)). However, Defendant asserts that because USPS had already denied Tort Claim II, it was too late for him to administratively amend his claim. (*Id.* (first citing 28 C.F.R. § 14.2(c); and then citing 39 C.F.R. § 912.5(b)(3) (USPS-specific regulation limiting amendment to "any time prior to . . . [t]he Postal Service's issuance of a written denial of the claim in accordance with § 912.9"))). Because Plaintiff filed Tort Claim III—which Defendant characterizes as an amended claim for damages based on the November 28, 2020 Accident—after the USPS issued its final denial of Tort Claim II, Defendant maintains that Tort Claim III was not timely. (*Id.*). As

---

[2]     The Court notes that Tort Claim I cannot be considered the operative administrative claim in this case. Pursuant to the FTCA, Plaintiff is required to submit a sum certain request for damages. 28 U.S.C. § 2675(a), (b); 28 C.F.R. § 14.2(a); *see also White-Squire*, 592 F.3d at 459–60. As will be discussed further below, here, Tort Claim I did not contain a sum certain request for damages. Rather in Tort Claim I, Plaintiff merely explained that his property damage and personal injury damages from the November 28, 2020 Accident were "currently unknown" and stated that his total damages were "currently unknown as bills [we]re still accumulating." (Ex. A to Juneau Decl.). This is insufficient to satisfy the sum certain requirement. *Hutchinson v. Weisinger*, No. 12-5792, 2015 WL 540293, at *4 (D.N.J. Feb. 10, 2015). Accordingly, because Tort Claim I did not contain a sum certain, it cannot be considered the operative administrative claim in this case. *See Young v. United States*, No. 18-2338, 2019 WL 3451565, at *1 n.1 (D.N.J. July 31, 2019).

such, Defendant argues that Plaintiff is limited to the $13,200 sum certain that he set forth for his property damages in Tort Claim II.  (*Id.* at 7).[3]

In Opposition, Plaintiff contends that Tort Claim III was timely because it constituted a request for reconsideration of Tort Claim II that was submitted within six months of USPS's denial of Tort Claim II.  (Opp. Br. at 2).  More specifically, Plaintiff explains that Tort Claim III "was a request for reconsideration as it provided the agency with medical documentation that they had not reviewed previously."  (*Id.*).  As such, Plaintiff maintains that he should not be limited to the $13,200 in damages he asserted in Tort Claim II, but rather should only be limited to the $1,007,101.38 in damages he claimed in Tort Claim III.  (*See id.* at 4).  In Reply, Defendant contends that Tort Claim III was plainly not a request for reconsideration, but rather a new or amended claim that was not properly asserted.  (Reply at 2).  Accordingly, Defendant maintains that Plaintiff's claims for damages in excess of the $13,200 presented in Tort Claim II should be dismissed.  (*Id.* at 2–3).  For the reasons set forth below, the Court agrees with Defendant.

As recounted above, after USPS denied Tort Claim II on October 24, 2022, because it found that Plaintiff failed to provide competent evidence to support his claim, it informed Plaintiff that if he was dissatisfied with USPS's final denial of his administrative claim he had six months to either (i) file suit in a United States District Court; or (ii) file a written request for reconsideration.  (Ex. F to Juneau Decl.).  Thereafter, on November 22, 2022, Plaintiff sent USPS Tort Claim III.  (Compl. at 2; Ex. G to Juneau Decl.; Ex. A to Falcione Decl.).  On January 11,

---

[3]      In its Moving Brief, Defendant also argues that Tort Claim III was defective because USPS received it on November 29, 2022, more than two years after the November 28, 2020 Accident.  (Mov. Br. at 9).  As such, Defendant asserts that Tort Claim III was untimely because under 28 U.S.C. § 2401(b), "a tort claim must be 'presented in writing to the appropriate Federal agency within two years after such claim accrues[.]'"  (*Id.* (alteration in original) (quoting 28 U.S.C. § 2401(b)).  In Opposition, Plaintiff points out that Tort Claim III was received by USPS by both certified mail and FedEx on November 28, 2022—within two years of the date of the accident.  (Opp. Br. at 2–3).  In Reply, Defendant concedes that Tort Claim III was timely received within two years of the date of the accident.  (Reply at 2 n.1).  As such, the Court does not consider this argument.

2023, USPS informed Plaintiff that it would take no action with respect to Tort Claim III.  (Ex. H to Juneau Decl.).  As an initial matter, USPS informed Plaintiff that to the extent Plaintiff was attempting to file a new/second administrative claim on behalf of himself for the November 28, 2020 Accident, "neither the Federal Tort Claims Act nor federal regulations allow for the filing of a new/second claim after the denial of a claim presented for the same incident by the same claimant." (*Id.*).[4]  As such, USPS stated it had no authority to consider such a claim.  (*Id.*).  Further, USPS informed Plaintiff that to the extent Plaintiff was attempting to amend his administrative claim, that amendment was untimely because USPS had already denied Tort Claim II.  (*Id.*).  As such, USPS stated it had no authority to consider such an amendment.  (*Id.*).  Based on this communication, it is clear that USPS did not interpret Tort Claim III as a request for reconsideration.  Rather, USPS interpreted Tort Claim III as either (i) a new administrative claim based on the same November 28, 2020 incident recounted in Tort Claim II; or (ii) an amendment of Tort Claim II.  In his Opposition, however, Plaintiff insists that Tort Claim III constituted a request for reconsideration of Tort Claim II, which was timely submitted within six months of USPS's denial of Tort Claim II.  (Opp. Br. at 2).  As such, the Court must consider whether Tort Claim III constituted a request for reconsideration.

Neither the applicable regulations nor case law address the issue of what constitutes a request for reconsideration in the context of administrative claims made under the FTCA.  It is true that a letter can be construed as a request for reconsideration even if it is not expressly labeled as a request for reconsideration.  *Martinez v. U.S. Postal Serv.*, No. 15-8545, 2016 WL 6892074, at *5 (D.N.J. Nov. 22, 2016); *Guardian Angels Med. Serv. Dogs, Inc. v. United States*, 120 Fed. Cl.

---

[4]    USPS also informed Plaintiff that to the extent Plaintiff was attempting to file a new/second administrative claim on behalf of himself for the November 28, 2020 Accident, that claim was untimely, as more than two years had elapsed since the date of the incident.  (Ex. G to Juneau Decl.).  Nevertheless, as already stated, Defendant concedes that Tort Claim III was timely received within two years of the date of the accident.  (Reply at 2 n.1).

8, 10 (Fed. Cl. Jan. 22, 2015) (holding that "[a] request for reconsideration need not be so titled or

even formally submitted" (citing *Metrotop Plaza Assocs. v. United States*, 82 Fed. Cl. 598, 601–

02 (2008))).  Nevertheless, as at least one court in this district has stated, in the context of claims

made pursuant to the FTCA, "a writing purporting to serve as a request for reconsideration should

reasonably indicate that the claimant is seeking to have the denial of its claim reviewed." *Martinez*,

2016 WL 6892074, at *5.

In the instant matter, the language of Tort Claim III does not plausibly indicate that Plaintiff

was seeking to have the denial of Tort Claim II reviewed.  As discussed, on April 20, 2021, Plaintiff

submitted Tort Claim II.  (Ex. D to Juneau Decl.).  In Tort Claim II, Plaintiff recounted the

November 28, 2020 Accident, explained that his car had been totaled as a result of the accident,

and stated that he suffered from severe back pain resulting in multiple trips to the hospital and

specialized visits with an orthopedic doctor.  (*Id.*).  In fact, he asserted that he was currently

undergoing several treatments as a result of his injuries.  (*Id.*).  Plaintiff reported property damage

from the November 28, 2020 Accident as "6,100 tow truck invoice" and "$7,100 value of car."

(*Id.*).  He stated that his personal injury damages were "currently unknown."  (*Id.*).  Plaintiff also

reported his total amount of damages as "$13,200 see attached invoice and estimate."  (*Id.*).  On

October 24, 2022, USPS mailed Plaintiff a letter denying Tort Claim II because Plaintiff had

"failed to provide the Postal Service with competent evidence to support [his] claim."  (Compl. at

1–2; Ex. F to Juneau Decl.).

On November 22, 2022, Plaintiff sent USPS Tort Claim III.  (Compl. at 2; Ex. G to Juneau

Decl.; Ex. A to Falcione Decl.).  In the cover letter which accompanied Tort Claim III, Plaintiff

recounted the same November 28, 2020 Accident which formed the basis of his prior tort claims,

again stated that he suffered from severe back pain resulting in multiple trips to the hospital,

explained the treatment Plaintiff received as a result of the accident, and referenced several enclosures, such as the police report, insurance documentation, and a property damage estimate. (Ex. G to Juneau Decl.; Ex. A to Falcione Decl.).  In connection with the cover letter, Plaintiff also submitted a new SF-95, which amended and increased the amount of damages claimed as a result of the accident.  (Ex. G to Juneau Decl.; Ex. A to Falcione Decl.).  The cover letter contained no reference to the USPS's October 24, 2022 decision denying Tort Claim II and did not request a different ruling or determination from that denial.  Nor did it "dispute the findings of the Postal Service or the Postal Service's decision to deny h[is] claim—the types of language typically prompting a request for reconsideration." *Martinez*, 2016 WL 6892074, at \*5.  Rather, Tort Claim III merely recounted many of the same facts that had already been set forth in Tort Claim II and then included a new SF-95 that amended and increased the damages claimed as a result of the accident.  (Ex. G to Juneau Decl.; Ex. A to Falcione Decl.).  In fact, in his own Complaint, Plaintiff does not characterize Tort Claim III as a request for reconsideration, but instead states that it constituted "an Administrative Claim for a sum certain."  (Compl. at 2).  Other than stating that Tort Claim III informed USPS as to the extent of the claim and included medical documentation to support the claim (Opp. Br. at 1–2), Plaintiff does not otherwise explain why the Court should treat Tort Claim III as a request for reconsideration.  (*See generally* Opp. Br. & Sur-reply (failing to set forth any argument to rebut United States's contention that Tort Claim III plainly did not constitute a request for reconsideration)).  Because Tort Claim III does not plausibly indicate that Plaintiff was seeking to have the denial of Tort Claim II reviewed, the Court finds that the facts do not support a finding that Plaintiff intended Tort Claim III to function as a request for reconsideration, or that USPS had any reason to construe it as one.  *Martinez*, 2016 WL 6892074, at \*5; *see also Bello v. United States*, 757 F. App'x 819, 822 (11th Cir. 2018) (declining to construe

presuit notice as a request for reconsideration on motion to dismiss in part where the "presuit notice contained no language to suggest that it was meant to serve as a request for reconsideration—it [did] not reference [the plaintiff's] administrative FTCA claim or the March 16 letter . . .denying that claim."); *Charles v. United States*, No. 21-7970, 2022 WL 17078650, at *4 (C.D. Cal. Sept. 30, 2022) (rejecting the plaintiff's attempt to recast his amended claim as a request for reconsideration that was timely filed); *Greenberg v. Kraich*, No. 04-3647, 2004 WL 2414006, at *3 (S.D.N.Y. Oct. 28, 2004) (finding that letter did not constitute request for reconsideration, in part, where letter nowhere requested that the FBI reconsider the plaintiff's claim); *Hart v. United States*, No. 82-386A, 1983 U.S. Dist. LEXIS 16400, at *2–3 (N.D. Ohio June 8, 1983) (rejecting plaintiff's attempt to request reconsideration of final agency denial and also attempt to amend the amount of the demand to a higher amount as "improper and not allowable" because "the plaintiff was entitled only to reconsideration of his claim" for the original demand).[5]  Rather, as the USPS found, it appears that Plaintiff, by filing Tort Claim III, attempted to submit either (i) a new

_____

[5]    The Court notes that there is an additional reason why Tort Claim III should not be construed as a request for reconsideration.  "Prior to the commencement of suit and prior to the expiration of the 6 month period provided in 28 U.S.C. 2401(b), [the] claimant . . . may file a written request with the postal official who issues the final denial . . . for a reconsideration of a final denial of a claim . . . ."  39 C.F.R. § 912.9(b).  "A timely filing of a written request for reconsideration resets the administrative clock[] and tolls the requirement for the filing of a lawsuit in district court."  *Martinez*, 2016 WL 6892074, at *3 (first citing 39 C.F.R. § 912.9(b); and then citing *Garcia v. United States*, No. 12-00072, 2012 U.S. Dist. LEXIS 107498, at *8 (S.D. Tex. July 31, 2012)).  In fact, upon such a filing, "the Postal Service shall have [another] 6 months from the date of filing in which to make a disposition of the" plaintiff's request for reconsideration.  39 C.F.R. § 912.9(b).  "The claimant may not file suit until either [i] the expiration of the new 6 month period[;] or [ii] until after the date of mailing of the final denial on the request for reconsideration.  *Martinez*, 2016 WL 6892074, at *4 (citing 39 C.F.R. § 912.9(b)).  Here, in alleging why his lawsuit was timely filed, Plaintiff alleges that the suit was properly commenced within "six months of October 24, 2022"—the date Tort Claim II was denied.  (Compl. at 2).  The fact that Plaintiff calculated the time within which he could properly file suit from the date of the denial of Tort Claim II, indicates that he did not view Tort Claim III as a request for reconsideration, as any request for reconsideration would have extended his time for filing suit until either (i) the expiration of 6 months from the date of filing the request for reconsideration or (ii) until after the date of mailing of the final denial on the request for reconsideration.  *Martinez*, 2016 WL 6892074, at *4 (citing 39 C.F.R. § 912.9(b)).

administrative claim based on the same November 28, 2020 Accident recounted in Tort Claim II; or (ii) an amendment of Tort Claim II.  Either way, Tort Claim III was not properly made.[6]

First, as USPS pointed out in its letter providing that it would take no action with respect to Tort Claim III, to the extent Plaintiff was attempting to file a new administrative claim on behalf of himself for the November 28, 2020 Accident, neither the FTCA nor federal regulations allow for the filing of a new claim after the denial of a claim presented for the same incident by the same claimant.  *See Roman-Cancel v. United States*, 613 F.3d 37, 42 (1st Cir. 2010) (noting that it is well-established that "one bite at the apple is all that the FTCA's claim-filing scheme allows"). Second, as USPS again pointed out in its letter providing that it would take no action with respect to Tort Claim III, to the extent Plaintiff was attempting to amend his administrative claim, that amendment was untimely because USPS had already denied Tort Claim II.  (Ex. H to Juneau Decl.).  Under the governing Postal Service regulation, an administrative claim may be amended at any time before the following, as applicable: the claimant exercises the option to file a civil action after expiration of the six-month period in which the agency must decide the claim; the Postal Service pays the claim in full; or the agency issues its final written denial of the claim.  39

---

[6]    The Court notes that even if Tort Claim III could somehow be construed as a request for reconsideration, which it is not, there would be another problem with Plaintiff's claims.  As stated, "[a] timely filing of a written request for reconsideration resets the administrative clock[] and tolls the requirement for the filing of a lawsuit in district court."  *Martinez*, 2016 WL 6892074, at *3 (first citing 39 C.F.R. § 912.9(b); and then citing *Garcia*, 2012 U.S. Dist. LEXIS 107498, at *8).  In fact, upon such a filing, "the Postal Service shall have [another] 6 months from the date of filing in which to make a disposition of the" plaintiff's request for reconsideration.  39 C.F.R. § 912.9(b).  "The claimant may not file suit until either [i] the expiration of the new 6 month period[;] or [ii] until after the date of mailing of the final denial on the request for reconsideration.  *Martinez*, 2016 WL 6892074, at *4 (citing 39 C.F.R. § 912.9(b)).  Here, after Plaintiff filed Tort Claim III in November 2022, USPS, on January 11, 2023 sent Plaintiff a letter informing him that it would take no action with respect to Tort Claim III.  (Ex. H to Juneau Decl.).  "Accordingly, the letter is better viewed as a notice of no action, rather than a notice of denial."  *Spinazzola v. United States*, No. 19-165, 2019 WL 6050723, at *7 (N.D. Okla. Nov. 15, 2019).  As such, because there was no final denial of Tort Claim III, Plaintiff could not have filed suit based on the disposition of his purported request for reconsideration until 6 months from the date of filing of that request, that is, within six months of November 2022.  Yet, Plaintiff filed suit in February of 2023, before the expiration of the six-month deadline.  (*See* Compl.).  Thus, even if Tort Claim III could somehow be construed as a request for reconsideration, which it is not, Plaintiff's suit based on the disposition of that purported request for reconsideration would be premature.

C.F.R. § 912.5(b); *see also* 28 C.F.R. § 14.2(c) (stating that a claimant may amend the notice of claim "at any time prior to final agency action or prior to the exercise of claimant's option under 28 U.S.C. § 2675(a)" to treat six months of inaction as a final denial).  Because Plaintiff filed Tort Claim III after the USPS issued its final decision denying Tort Claim II, Tort Claim III could not constitute a timely amendment.  *See Redlin v. United States*, 921 F.3d 1133, 1139 (9th Cir. 2019).  As such, because Tort Claim III was not properly made, Plaintiff must be limited to the "sum certain" in damages he set forth in Tort Claim II.  The only "specific sum" for damages Plaintiff set forth in Tort Claim II was for $13,200 in property damages.  *Bialowas*, 443 F.2d at 105; (*see* Ex. D to Juneau Decl. (reporting property damage from the November 28, 2020 Accident as "6,100 tow truck invoice" and "$7,100 value of car" and stating that total amount of damages was "$13,200 see attached invoice and estimate.")).  Plaintiff's statement in Tort Claim II that his personal injury damages were "currently unknown" does not alter this conclusion.  *Hutchinson*, 2015 WL 540293, at *4 (finding that the plaintiff failed to satisfy the "sum certain" requirement where the plaintiff's claim form read only "unknown at this time" with respect to damages).  As a result, Plaintiff must be limited to the $13,200 sum certain that he set forth for his property damages in Tort Claim II.

In Sur-reply, Plaintiff for the first time argues that both Tort Claims I and II were procedurally defective because neither of those claims included a "sum certain" for personal injury damages.  (Sur-reply at 1).  As such, Plaintiff asserts that Tort Claims I and II were never properly filed with USPS.  (*Id.* at 2).  Thus, Plaintiff contends that the only properly filed administrative claim was Tort Claim III, and he argues that Tort Claim III is the only administrative claim that can be considered for the purpose of limiting damages.  (*Id.*).  For the reasons set forth below, the Court disagrees.

As an initial matter, the Court notes that it was improper for Plaintiff to raise a new argument for the first time in Sur-reply. *Smithkline Beecham PLC v. Teva Pharms. USA, Inc.*, Nos. 04-0215, 05-0536, 2007 WL 1827208, at *2 (D.N.J. June 22, 2007) ("[N]ew arguments cannot be raised by the non-movant in a sur-reply because the moving party does not have an opportunity to respond to newly minted arguments raised in a sur-reply."); *Mirtech, Inc. v. AgroFresh, Inc.*, No. 20-1170, 2023 WL 3190871, at *4 n.8 (D. Del. May 1, 2023) (finding arguments raised for the first time in sur-reply waived). Nevertheless, for the reasons that will be set forth below, Plaintiff's argument is unavailing.

As already recounted, Plaintiff argues that both Tort Claims I and II were procedurally defective because neither of those claims included a "sum certain" for personal injury damages, but rather stated that those damages were "currently unknown." (Sur-reply at 1). As such, Plaintiff asserts that Tort Claims I and II were never properly presented and contends that the only properly filed administrative claim was Tort Claim III. (*Id.* at 2). As an initial matter, the Court agrees that Tort Claim I was never properly presented. As discussed, a plaintiff suing under the FTCA must present the offending agency with notice of the claim, including a "sum certain" demand for monetary damages. *See White-Squire*, 592 F.3d at 457. To satisfy this requirement, the claimant "must state a 'specific sum' or 'information . . . from which a specific amount could be computed.'" *Bruno*, 264 F. App'x at 249 (alteration in original) (quoting *Bialowas*, 443 F.2d at 1049). Upon review, the Court finds that Tort Claim I did not contain a sum certain. In Tort Claim I, Plaintiff explained that his property damage and personal injury damages from the November 28, 2020 Accident were "currently unknown" and stated that his total damages were "currently unknown as bills [we]re still accumulating." (Ex. A to Juneau Decl.). It, however, did not state a 'specific sum' or 'information . . . from which a specific amount could be computed.'" *Bruno*,

264 F. App'x at 249 (alteration in original) (quoting *Bialowas*, 443 F.2d at 1049).   This is insufficient to satisfy the sum certain requirement.   *Hutchinson*, 2015 WL 540293, at *4 (finding that the plaintiff failed to satisfy the "sum certain" requirement where the plaintiff's claim form read only "unknown at this time" with respect to damages).   Because of this deficiency, USPS did not finally deny Tort Claim I, but rather stated that it could not accept Tort Claim I because, among other things, it failed to provide a claim for a specific amount.   (*See* Exs. B & C to Juneau Decl.). Accordingly, the Court agrees with Plaintiff and finds that because Tort Claim I did not satisfy the sum certain requirement, it was not properly presented.   *See Meehan v. Taylor*, No. 12-4079, 2013 WL 4517943, at * 4 (D.N.J. Aug. 26, 2013) (stating that where an administrative claim fails to specify a sum certain, it will be considered a nullity and "[b]ecause an improperly presented claim precludes the opportunity for meaningful agency assessment, the practical effect is that no claim is considered to have been filed with the agency at all").

The same conclusion is not warranted, however, with respect to Tort Claim II.   The Court finds the Fifth Circuit's decision in *Broussard v. United States*, 52 F.4th 227 (5th Cir. 2022) persuasive and instructive in addressing whether Tort Claim II was defective.   In *Broussard*, the plaintiff submitted a SF-95 after he allegedly was involved in a car crash with a USPS driver. *Broussard*, 52 F.4th at 228.   On the SF-95, the plaintiff claimed $15,169.58 in property damages, but did not list any personal injury damages.   *Id.*   Under the section asking about the extent of his injuries, the plaintiff wrote "None so far."   *Id.*   The USPS denied the plaintiff's claim in a letter sent on March 26, 2020, and notified the plaintiff that if he was dissatisfied with the denial he could sue in federal court "no later than six (6) months after the date the Postal Service *mails* the notice of that final action," or, also within six months, "file a written request for reconsideration with the postal official who issued the final denial of the claim."   *Id.*   The plaintiff did neither.   *Id.*

17

Instead, on December 1, 2020, more than six months after the initial denial, the plaintiff—newly represented by an attorney—sent in another SF-95, which described the same accident but now claimed that the plaintiff had "sustained injuries to his lower back" and "requested $2,000,000 in personal injury damages and $0 in property damages." *Id*. USPS denied the plaintiff's new SF-95, explaining that he was "not entitled to submit more than one claim resulting from the [same] motor vehicle collision." *Id.* at 228–29. The plaintiff filed suit, which the district court dismissed, concluding that the plaintiff's claim was untimely because he did not sue within six months of the March 2020 denial. On appeal, the plaintiff contested the district court's ruling. "He contend[ed] that, while the USPS denied his claim for property damages in his first SF-95, it never denied his personal injury claim in his second SF-95." *Id.* at 229. More specifically, the plaintiff argued that "because he claimed '[n]one so far' under the personal injury section of his first SF-95, a valid claim with respect to his personal injuries was never presented. And because it was not presented, he asserts that it could not have been denied." *Id.* (alteration in original). The Fifth Circuit rejected this argument. The court noted that in his first SF-95, the plaintiff "provided adequate facts to put the USPS on notice of the relevant incident" and also "provided a specific sum—$15,169.58—representing his claimed amount of property damage." *Id.* at 229–30. It further noted that the USPS's March 2020 letter denying the plaintiff's first SF-95 referred to the plaintiff's entire "administrative claim" and stated "this claim is denied." *Id.* at 230. The court emphasized that USPS in no way limited its denial only to property damage claims. *Id.* As such, the Fifth Circuit concluded that the plaintiff's first SF-95 presented his entire claim based on his accident with USPS. *Id.* Although the plaintiff attempted to argue that "his second SF-95 present[ed] a claim distinct from his first one because it [sought] personal injury instead of property damages," the Fifth Circuit found such an argument to be mistaken. *Id.* The court explained that the plaintiff's

first and second SF-95s referred to the same accident and emphasized that the plaintiff "offer[ed] no authority for the proposition that the two SF-95s, despite arising out of the same incident, present distinct claims" under the FTCA.  *Id.*  To the contrary, the court stated that "one bite at the apple is all that the FTCA's claim-filing scheme allows."  *Id.* (internal quotation marks omitted) (quoting *Roman-Cancel*, 613 F.3d at 42).

The Court finds the present facts analogous to those presented to the Fifth Circuit in *Broussard*.  Here, Plaintiff argues that Tort Claim II was procedurally defective because it did not include a "sum certain" for personal injury damages but rather stated that those damages were "currently unknown."  (Sur-reply at 1).  This argument is unavailing.  Although Plaintiff listed his personal injury damages as "currently unknown" in Tort Claim II, he also, like the plaintiff in *Broussard*, provided adequate facts in Tort Claim II to put the USPS on notice of the property damage and personal injuries Plaintiff incurred as a result of the November 28, 2020 Accident and provided a specific sum—$13,200—representing his claimed amount of property damage.  (Ex. D to Juneau Decl. (explaining that Plaintiff's car had been totaled as a result of the accident and describing that Plaintiff suffered from severe back pain resulting in multiple trips to the hospital and specialized visits with an orthopedic doctor)).  Further, like in *Broussard*, here, USPS's October 24, 2022, letter denying Tort Claim II referred to Plaintiff's entire "administrative claim" and stated this "claim is denied."  (Ex. F to Juneau Decl.).  USPS in no way limited its denial only to Plaintiff's property damage claims.  (*Id.*).  Accordingly, though Plaintiff, like the plaintiff in *Broussard*, did not state any damages for personal injuries in Tort Claim II, the Court finds that Tort Claim II presented his entire claim based on the November 28, 2020 Accident with USPS.  *Broussard*, 52 F.4th at 228.  As such, Plaintiff's contention that Tort Claim III was the only

properly presented administrative claim is unavailing.[7]  *See also Davis v. United States*, No. 05-1609, 2007 WL 951442, at *7, 15 (W.D. Pa. Mar. 26, 2007).

Plaintiff was clearly aware of the possibility of a personal injury claim when he stated "currently unknown" as to the extent of any personal injury damages in Tort Claim II.  (Ex. D to Juneau Decl.).  In fact, when submitting Tort Claim II Plaintiff stated that he suffered from severe back pain resulting in multiple trips to the hospital and specialized visits with an orthopedic doctor and asserted that he was currently undergoing several treatments as a result of his injuries.  (*Id.*).  Ultimately, Plaintiff could have amended Tort Claim II to include personal injury damages as well as property damages.  And in fact, based on the record, it appears that this is exactly what he attempted to do in filing Tort Claim III.  However, as explained above, because Plaintiff filed Tort Claim III after the USPS issued its final decision denying Tort Claim II, Tort Claim III could not constitute a timely amendment.  *See Redlin*, 921 F.3d at 1139.  And Plaintiff was not otherwise entitled to file another administrative claim arising out of the same November 28, 2020 Accident.  *See Broussard*, 52 F.4th at 230 (explaining that two SF-95s based on the same incident do not present distinct claims even if the claimed types of injury in each SF-95 are different); *Freeman v. United States*, 166 F. Supp. 3d 215, 222 (D. Conn. 2016), *abrogated on other grounds by Corley v. United States*, 11 F.4th 79 (2d Cir. 2021) ("In this case, Mr. Freeman's SF-95 claims are duplicative because the incident allegedly giving rise to government liability under the FTCA is the same in both claims.").  Plaintiff's filing of Tort Claim III, which identified increased personal injury damages stemming from the very same underlying incident identified in Tort Claim II, does

---

[7]     To support his argument that Tort Claim III was the only properly presented administrative claim, Plaintiff cites to the Third Circuit's decision in *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 459 (3d Cir. 2010).  (Sur-reply at 1).  However, in *White-Squire*, the plaintiff did not provide any estimate of damages to the USPS when filing her administrative claim.  *White-Squire*, 592 F.3d at 455.  This is in contrast to the present case where Plaintiff provided a specific sum—$13,200—representing his claimed amount of property damage in Tort Claim II.  (Ex. D to Juneau Decl.).  As such, Plaintiff's reliance on *White-Squire*, is unavailing.

not present a distinct claim. Instead, Plaintiff had his "one bite at the apple" when he filed Tort Claim II. *Roman-Cancel*, 613 F.3d at 42; *Broussard*, 52 F.4th at 230. And limitations on the FTCA's waiver of sovereign immunity must be strictly construed in favor of the United States. *See, e.g., Livera*, 879 F.2d at 1194. Because Tort Claim II did not include any personal injury damages, and Plaintiff did not properly amend that claim before Tort Claim II was denied, the Court lacks jurisdiction over any damages claim in excess of the $13,200 in damages set forth in Tort Claim II. Accordingly, because Tort Claim II presented Plaintiff's entire claim based on the November 28, 2020 Accident with USPS, Plaintiff is limited to the specific sum of property damages—$13,200—stated therein.[8]

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion (D.E. No. 7) is **GRANTED,** and Plaintiff's claim for damages in excess of $13,200 is dismissed *with prejudice*. An appropriate Order follows.

**Dated:** February 26, 2024

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[8]     28 U.S.C. § 2675(b) provides that an action under the FTCA "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation of proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). Plaintiff does not argue that the increased amount of damages he is seeking in this action in excess of $13,200 is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation of proof of intervening facts, relating to the amount of the claim. (*See generally* Opp. Br. & Sur-reply). As such, the Court does not consider any such argument.